## OKLAHOMA MOLINE PLOW CO. v. SMITH et al.

No. 8453—Opinion Filed Nov. 16, 1920.

On Rehearing, March 1, 1921. Application to File Second Petition for Rehearing Denied April 5, 1921.

(Syllabus.)

**1. Judgment—Res Judicata—Damages in Replevin.**

While a final judgment in an action for the replevin of merchandise is not res adjudicata of an action for the damages sustained by the defendant as a result of the malicious and unwarranted institution and prosecution of the replevin suit, where, in a replevin action, the defendant pleads as a defense in his answer damages to his credit and injury to his business as a merchant on account of the malicious intent of the plaintiff in instituting said action, and issues are joined between plaintiff and defendant thereon, the defendant waives the objection that such damages were not proper subjects to be litigated in the action.

**2. Same—Scope of Inquiry.**

The inquiry of res adjudicata is not limited to the mere formal judgment. It extends to the pleadings, the verdict or the findings, and the scope and meaning of the judgment is often determined by the pleadings, verdict, or findings.

**3. Same—Judgment in Replevin—Damages.**

Record examined, and held: (a) That the judgment in the replevin action was conclusive against the plaintiff's right to maintain a subsequent action against the defendant to recover damages for injury to his credit and business on the grounds that the replevin action was malicious and without probable cause; (b) judgment of the trial court reversed and judgment rendered for the plaintiff in error for costs.

**4. Judgment—Estoppel by Judgment—Extent of Estoppel.**

A judgment is conclusive in a second suit upon the same cause of action and between the same parties as to every question which was or might have been presented and determined in the first suit; but when the second suit is upon a different cause of action, though between the same parties, the judgment in the first suit operates as an estoppel only as to the point or question actually litigated and determined, and not as to other matters which might have been litigated and determined.

Error from District Court, Blaine County; Thos. A. Edwards, Judge.

Action by O. A. Smith against the Oklahoma Moline Plow Company for damages. Judgment for plaintiff, and defendant brings error. R. A. Lyle, trustee in bankruptcy, substituted defendant in error. On petition for rehearing, affirmed in part and reversed in part.

Keaton, Wells & Johnston, for plaintiff in error.

Oliver C. Black, J. D. Morse, J. C. Willingham, and H. E. Tyson, for defendant in error R. A. Lyle.

JOHNSON, J. This is an appeal from the district court of Blaine county; Thos. A. Edwards, Judge.

The plaintiff, O. A. Smith, commenced this action in said court against the defendant, Oklahoma Moline Plow Company, a corporation, to recover damages upon two causes of action—$1,790 on the first cause of action, and $15,750 on the second—and recovered a verdict for the full amount of the first cause of action and for the sum of $7,952 on the second, for which amount the trial court rendered judgment, and to reverse the judgment for the latter amount of said second cause of action, this proceeding in error has been regularly commenced by the defendant by petition in error in this court with case-made attached.

On September 24, 1918, Isaac D. Taylor, referee in bankruptcy, in case No. 1335, in the district court of the United States for the Western district of Oklahoma, In re Smith and Cronkhite, Co-Partnership Composed of O. A. Smith and Frank Cronkhite, and O. A. Smith, as Individual, Bankrupts, ordered and directed R. A. Lyle, trustee in said cause, to intervene in this cause and present his claims and take such further action and steps in this proceeding as might be necessary to protect his interest as such trustee as might be allowed by this court. And on his application so to do, this court, on January 20, 1920, made an order permitting the said trustee to intervene and to be substituted herein for the said O. A. Smith, defendant in error. And thereafter, on August 11, 1920, the said trustee, so substituted, through his counsel, filed his brief in this cause.

The record discloses that the plaintiff, O. A. Smith, was engaged in the hardware business at Watonga, and in October, 1909, began negotiations to trade off his entire business, including his homestead and real estate, to one J. E. Pattee. In pursuance of said negotiations he thereafter, and on November 11, 1909, entered into a contract with said Pattee for a bulk sale. Notice to creditors was given as required by the bulk sales law, and as a result thereof a meeting of creditors was held at Oklahoma City, on Saturday, December 4, 1909, and collectors and agents

of various wholesale houses met with the plaintiff and discussed the proposition of settlement and the sale of his business that was contemplated. The creditors decided to hold a further meeting at Watonga December 6th, and to send two or three collectors to Alva to investigate the value of the lands securing the second mortgage notes, for which plaintiff, Smith, was proposing to trade off his business. Negotiations and meetings were had and offers of settlement were considered by creditors at Watonga all day of the 6th and the evening of the 6th. The main controversy involved herein grows out of what occurred at these meetings of creditors referred to, and especially the one held at Watonga on the day and evening of December 6th.

The plaintiff's contention is fully set forth in his petition setting up his second cause of action against the defendant in the following language:

"That for a number of years prior to the commencement of said action, number 1741, by plaintiff on December 7, 1909, and at said time, this plaintiff had been, and was engaged in the town of Watonga, Blaine county, Oklahoma, conducting and operating a general retail hardware, vehicle, implement, and harness store which said business at said time was in a flourishing and well-established condition, and the plaintiff was for a long time prior thereto, and at said time, enjoying great profits and advantages from operating said business. That immediately prior to the said December 7, 1909, the plaintiff made a contract to sell his said stock of hardware, vehicles, and harness, together with certain real property, owned by the plaintiff, to one J. E. Pattee, at the agreed price, for all of said property, of fifteen thousand five hundred dollars ($15,-500.00). That in compliance with the law, notice was given to the creditors of this plaintiff of the aforesaid intended sale of said stock, in bulk, and in accordance with said notice various and numerous respresentatives of the creditors of the plaintiff came to Watonga, Oklahoma, for the purpose of making adjustments and arrangements regarding their accounts, against this plaintiff and including the said representatives of the creditors of the plaintiff was one W. P. Hubbard, who, at that time, was the duly authorized agent and representative of the defendant, the Oklahoma Moline Plow company, That immediately prior to the commencement of said action, number 1741, as aforesaid, the said representatives of the creditors of the plaintiff met together with the plaintiff and other parties interested and came to a satisfactory agreement and understanding, mutually among themselves, regarding the manner in which plaintiff's indebtedness to said creditors should be arranged and adjusted, and at that time all of

the said creditors, including the Oklahoma Moline Plow Company, acting by its aforesaid agent and representative, agreed and consented that the plaintiff's said contract to sell said property, should be permitted to be performed and executed by plaintiff, without objection on the part of said creditors, including the defendant, the Oklahoma Moline Plow Company. That the aforesaid understanding and arrangement, and the aforesaid consent and agreement, were made and given by all the parties aforesaid late in the afternoon of the day preceding the commencement of the aforesaid action, number 1741, by the Oklahoma Moline Plow Company, That on the day following, the defendant, the Oklahoma Moline Plow Company, wrongfully, unlawfully, maliciously, and with the wrongful and malicious intent and purpose of injuring this plaintiff and preventing his completing his contract with the said J. E. Pattee, commenced its said action in replevin as hereinbefore alleged and obtained thereby possession of a vast amount of goods and merchandise maintained in plaintiff's said store. That as a direct result and consequence of the defendant's, the Oklahoma Moline Plow Company's, so bringing the aforesaid action and obtaining the possession of the said goods and merchandise, as alleged, other of the creditors of this plaintiff became alarmed for the security of their claims and demands against the plaintiff, and commenced, immediately, various and numerous actions at law against this plaintiff, and that by reason of the bringing by the defendant of the aforesaid wrongful and malicious action in replevin this plaintiff was placed in a position in which he was unable to comply with, perform, and fulfill his aforesaid contract, and sell said stock and real property to the said J. E. Pattee, and that, immediately thereupon, the said Pattee served upon this plaintiff a written notice of his rescission of said contract, and that this plaintiff, on account of being prevented from making and completing said sale, lost and was deprived of the profits that would have been received had said sale been completed, which said profits, the plaintiff alleges, would have amounted to the sum of thirty-five hundred dollars ($3,500.00) and that the plaintiff was, and is thereby damaged, by reason of the aforesaid malicious action of the defendant, the Oklahoma Moline Plow Company, as hereinbefore alleged, in the sum of thirty-five hundred dollars ($3,500.00), by loss of said profits. The plaintiff further alleged that for a long time prior to and at the time of the commencement of the aforesaid wrongful and malicious action in replevin by the said Oklahoma Moline Plow Company he possessed and enjoyed a large and extensive credit in his said business in the commercial world; that by reason of the said defendants bringing said replevin action, numerous other creditors of this plaintiff brought their several actions against the plaintiff, as before alleged, and the plaintiff was thereupon compelled to make a compo-

sition settlement with his said creditors, by reason of all of which this plaintiff's aforesaid credit was damaged and injured in the sum of ten thousand dollars ($10,000.00). Wherefore, the plaintiff alleges that he was and is damaged in the additional sum of ten thousand dollars ($10,000.00)."

And the defendant, before the commencement of the trial, by leave of the court, filed an amendment to its answer wherein it alleged:

"Comes now the defendants and by leave of court file this their amendment to their answer heretofore filed herein. Defendants allege that in case No. 1741, in this court, entitled Oklahoma Moline Plow Company v. O. A. Smith. et al., the defendant therein filed an answer in which he alleged, among other things, the following:

" 'That in response to said notice of intended sale, so given as aforesaid, the plaintiff herein and numerous other creditors of this defendant sent their various representatives, agents, and attorneys to Watonga, Oklahoma, immediately after the receipt of said notices, for the purpose of protecting their claims against this defendant in his deal with the said Pattee for the intended sale to Pattee of said stock of goods, wares and merchandise. That the plaintiff herein sent as its representative one W. P. Hubbard, who is the same person who made the affidavit on behalf of plaintiff in this case. That on or about the 6th day of December, 1909, and prior to the bringing of this action by plaintiff, the said representatives, attorneys, and agents of the various creditors of this defendant, including the plaintiff's real agent and representative, W. P. Hubbard, met together in conference with the defendant and the said J. E. Pattee, and other persons interested in said intended sale, for the purpose of devising and agreeing upon some agreement whereby the intended sale by defendant to Pattee would be consummated and completed, and the said creditors of this defendant, at the same time, fully paid or protected. That under the provisions of said contract with Pattee, the defendant was to receive, as consideration for said sale, and transfer of property, from the said Pattee, certain notes secured by real estate mortgages. * * * That in order for this defendant to make such payment to Pattee and in order for him to make full payment to his creditors of the amounts of their claims, accounts, and notes against him, it was necessary for a sale of said notes to be negotiated and the proceeds thereof to be used for those purposes.

" 'Defendant further alleges that it was agreed by said creditors that a trustee should be appointed to hold the notes that were to be executed in payment of said stock and to apply the proceeds thereof to the claims of creditors; that on the 7th day of December, 1909, the plaintiff, without demand for the possession of said property and with malicious intent to embarrass and harass de-fendant, filed said suit in replevin; that as a result the said Pattee refused to consummate the said sale, whereby defendant was damaged in the sum of $2,500 as lost profits on said sale; that the defendant had a large trade credit which was injured by reason of said replevin suit to his damage in the sum of $10,000; that he was compelled to employ an attorney and to meet charges on account of said litigation, whereby he was damaged in the sum of $1,000. Wherefore, defendant prays judgment, first, for the return of the property or its value; and, second, for the sum of $14,500 as damages on account of said replevin suit.'

"That all matters and things set up in plaintiff's second cause of action herein were pleaded and in issue in such former suit, and were determined and concluded by the judgment therein recited in plaintiff's petition in this case, and that each and all of such matters and issues are res judicata and were determined by said judgment and are not the subject of judicial inquiry."

To which answer as amended the plaintiff filed a reply consisting of a general denial.

On the 6th day of January, 1916, and before the parties announced ready for trial, the defendant filed its motion for judgment on the pleadings upon the second cause of action contained in the plaintiff's petition for the reasons, first, that the allegations of said petition contained in the second count were insufficient to show a cause of action in favor of the plaintiff and against the defendant; second, that the pleadings in this case show affirmatively that all matters and things alleged in said second pretended count or cause of action were adjudicated, or should have been adjudicated, in cause No. 1741 in the same court, entitled Oklahoma Moline Plow Co. v. O. A. Smith et al., and that the judgment of the court rendered in such action is conclusive upon the plaintiff herein as to the amount he is entitled to recover from the defendant and amount of damages for wrongful replevin or otherwise, which motion was overruled by the court and exceptions saved.

Upon the trial of the cause the court gave its general instructions to the jury, requiring them to return a general verdict in the case, and, in addition to said instructions, submitted to the jury four interrogatories, the third of which was as follows: "What amount of damages do you find this plaintiff sustained by reason of loss of business credit and standing?" The answer to which, returned by the jury, was "$7,925.00." The answer of the jury to the remaining three interrogatories was, "No damages."

The petition in error assigns error in the record as follows:

(1) "In overruling motion of plaintiff in error for new trial.

(2) "In refusing plaintiff in error's motion for judgment on the pleadings.

(3) "In refusal of each of the special instructions Nos. 2 to 24, inclusive.

(4) "In giving instructions 12 and 13.

(5) "In admitting incompetent evidence.

(6) "In refusing competent material evidence.

(7) "In rendering judgment for defendant in error where the verdict was excessive and showed prejudice.

(8) "In overruling demurrer of plaintiff in error to the evidence of defendant in error.

(9) "Error in matters of law occurring at the trial and duly excepted to."

The first proposition discussed by counsel for plaintiff in error in their brief is as follows: "The claim for damages was res judicata." Concerning this proposition counsel for plaintiff in error say in their brief:

"Our proposition here is that the claim for damages to plaintiff's credit upon which he recovered judgment for about eight thousand dollars was a proper matter to have been pleaded and was actually pleaded in the original replevin case, and that the judgment in that case was conclusive of plaintiff's right to recover on such claim. The question is raised in several different ways. Plaintiff's petition sets out the substance of the judgment in the replevin case, and to this we demurred. We think it will be conceded that, if the petition showed upon its face a former adjudication, such petition was demurrable. However, defendants filed an amendment to their answer, which is set out on page 21 of this brief, specifically pleading that in the replevin suit Smith made the same claim for damages and that all matters and things set up on plaintiff's second cause of action was determined and concluded by the judgment in the former case. The reply being an unverified general denial, admitted our allegations, to the effect that his answer in the replevin suit claimed the same damages he was claiming in this suit. The point is also raised by defendants' motion for judgment on the pleadings."

In answer to the foregoing, counsel for defendant in error, the trustee in bankruptcy, say in their brief:

"Plaintiff in error offered no proof whatever under this head, but the case was tried by the trial court and counsel for both sides upon the theory that the trial court had judicial knowledge of the issues of the former action. This theory we are not in position to repudiate in this court. * * * The real reason why the plea of res judicata falls down, even admitting that the former judgment had been proven, is that it is a malicious action and did not accrue until the replevin action was determined and could not therefore have been determined in the replevin action, if it had been pleaded by the defendant in replevin by way of counterclaim or otherwise."

It seems clear to us, as was held by this court in the case of Harris v. Milligan, 68 Oklahoma, 171 Pac. 850, that "a final judgment in a replevin action is not res adjudicata of an action for damages sustained by the defendant as a result of the malicious and unwarranted institution and prosecution of the replevin suit, for the reason that in order to constitute a good plea of res adjudicata the subject-matter of the action must be the same." The subject-matter in the replevin suit was the hardware, implements, and vehicles replevied, the subject-matter of the instant case is the institution and prosecution of the replevin action. Hence it was not proper for Smith to plead in his answer in the replevin suit as a defense that defendant had a large trade credit which was injured by reason of said replevin suit in the sum of $10,000. But regardless of the question whether it was proper for him to plead damages to his credit resulting from the malicious bringing of the replevin suit as a counterclaim or cross-petition in that suit, it is alleged in the answer that he did so. This, we think, brings the case within the rule announced by this court in the case of Word v. Nakdimen, 74 Oklahoma, 178 Pac. 257:

"Where a counterclaim for damages on account of an alleged wrongful attachment is set up in the answer, the plaintiff, by filing a reply, thereby joins issue thereon, and waives the objection that such damages were not proper subjects for counterclaim in the action." Wyman v. Herard, 9 Okla. 35, 59 Pac. 1009; Scanlan v. Barkley et al., 72 Oklahoma, 178 Pac. 674.

In the case of Wyman v. Herard, supra, after discussing the principle involved and citing numerous cases, McAtee Justice, speaking for the court, said:

"But even if the law were otherwise and the counterclaim an improper one, the defendant waived an objection by not demurring to the answer and the counterclaim of the defendant. * * * It was abundantly manifest on the face of the counterclaim that other persons besides the defendant were interested in the subject of the action, and might, if the plaintiff saw fit, be brought in to participate in the disposition of the cause; and likewise, the counterclaim upon its face exhibited its exact relation to the action, and upon both these grounds, if it was intended by the plaintiff to raise them at all, it was necessary to raise them by demurrer,

and if not so raised and the plaintiff waives the advantage which might accrue to him by demurrer, and replies, he cannot afterward take advantage of the fact that the counterclaim is sufficient, or that there are other parties to the action."

The allegations in the defendant's amendment to its answer discloses that the plaintiff, in the replevin action, by his answer, pleaded as a defense damages to his business in the sum of $10,000, in the same amount and in practically the same language used in his petition herein, and that was the identical element of damages upon which a recovery was had in the second cause of action pleaded by the plaintiff in the instant case, in the sum of $7,625, and no other, and the jury specifically so found, and, it being true as stated by counsel for defendant in error in their brief that plaintiff in error offered no proof whatever under this head, but the cause was tried by the trial court and counsel for both sides upon the theory that the trial court had judicial knowledge of the issues of the former action, and likewise we say of the issues made by the pleadings in the instant case.

In these circumstances the question of res adjudicata was a question of law for the court, and the record discloses that the same matter and facts and damages constituting the cause of action in this case were actually pleaded in the defendant's answer to the replevin suit; he alleged the same series of facts and conditions later set out in his petition, and that the replevin suit was brought with malicious intent, and that he sustained damages to his credit resulting from the malicious bringing of the replevin suit in the sum of $10,000. Thus the issue stood, and under every principle of res adjudicata the judgment in the replevin suit is conclusive as to the question of damages by reason of the malicious bringing of such action, and the trial court erred in not so holding.

The judgment of the trial court is reversed and judgment is here rendered for plaintiff in error, the Oklahoma Moline Plow Company, for its costs.

All the Justices concur.
On Petition for Rehearing.

McNEILL, J. On rehearing, the court's attention is for the first time called to the fact that the claim for damages in the replevin action was dismissed by Smith without prejudice and not litigated in the former action. Plaintiff in error asserts that the claim for damages had been litigated in the replevin action, and defendants in error in their brief failed to advise the court of the

fact that the claim for damages was dismissed without prejudice and this court assumed, as it had a right to, that the question had been really litigated in the former action.

The opinion announces the correct rule of law under the facts as stated in the opinion, and we do not now feel inclined to withdraw the opinion.

There is an error in the record which requires a reversal of the case, and we will content ourselves upon rehearing in discussing that question. Among the instructions given was No. 13, which was excepted to by the plaintiff in error. The court in this instruction told the jury that the law in this case was that at the time of the commencement of the replevin action Smith was solvent. There was considerable conflicting evidence upon this question introduced in the trial of this case. This instruction was given upon the theory that the question of solvency was either determined in the replevin action, or should have been. It must be remembered that the former action was a replevin action, and the question involved was the right of possession of certain personal property. The Moline Plow Company brought the action claiming a special ownership in the property by virtue of a written contract of sale purporting to be a conditional sale, and claimed the right of possession of said property. The defendant filed a denial, and also set up his counterclaim. There was no evidence introduced in the replevin case regarding the solvency or insolvency of O. A. Smith, therefore the question of solvency was not an issue, although it might have been an issue under the contract of sale.

There is a long line of cases in this state holding that a judgment is conclusive in a second action upon the same claim or demand or cause of action between the same parties as to every question that was litigated or might have been litigated in that action. It must be remembered, however, that this is not the same cause of action, nor the same kind or character of action, nor the same claim or demand, but is a different action founded upon a different claim and demand. The former action was an action for possession of personal property. This is an action for damages for malicious prosecution of the replevin action. The question of solvency was not an issue in the former case, nor was any evidence introduced upon that question; that being true, it cannot be said that the same was litigated. The general rule is that a judgment in a former action does not operate as an estoppel in another

action on a different claim except as to those questions actually litigated. The rule stated in 15 R. C. L. 973, is as follows:

"When the second action between the same parties is upon a different claim or demand, or cause of action, it is well settled that the judgment in the first suit operates as an estoppel only as to the point or question actually litigated and determined, and not as to other matters which might have been litigated and determined."

The Supreme Court of the United States, in the case of Eleanor Nesbitt v. The Independent District of Riverside, 144 U. S. 610, 36 L. Ed. 562, stated as follows:

"A judgment is conclusive in a second suit upon the same cause of action and between the same parties as to every question which was or might have been presented and determined in the first suit; but when the second suit is upon a different cause of action, though between the same parties, the judgment in the first suit operates as an estoppel only as to the point or question actually litigated and determined, and not as to other matters which might have been litigated and determined."

By applying the same principle of law to the case at bar, the question of the solvency of O. A. Smith was a material issue in this case in determining the amount of his damages, and whether he was solvent or insolvent was a question for the jury to determine under the evidence, and it was error for the court to instruct the jury as a matter of law that the said O. A. Smith was solvent.

The original opinion is modified and the judgment of the district court as to the first cause of action is affirmed, and the case reversed as to the second cause of action, and the cause remanded, with instructions to grant plaintiff in error a new trial, and the petition for rehearing is denied.

HARRISON, C. J., and PITCHFORD, JOHNSON, ELTING, and NICHOLSON, JJ., concur.