## In re GYPSY OIL CO.

No. 20363. Opinion Filed Dec. 10, 1929.

Rehearing Denied Feb. 25, 1930.

James B. Diggs, William C. Liedtke, Russell G. Lowe, Redmond S. Cole, and C. L. Billings, for protestant.

Byron Kirkpatrick, Co. Atty., Hugh Webster, Asst. Co. Atty., Ed. O. Cassidy, Eugene Jordan, and Allen, Underwood & Canterbury, for protestee.

ANDREWS, J. The Gypsy Oil Company, a corporation, protested certain tax levies made by the county excise board of Tulsa county for the fiscal year beginning July 1, 1928, as being illegal and excessive, and presented evidence in support thereof to the Court of Tax Review. Protestant and protestee each appealed from the judgment rendered. The three grounds of protest involved in these appeals will be considered separately.

The third ground of protest involves the constitutionality of chapter 48, S. L. 1923-24, and the legality of the levy made for county highway purposes, which is alleged to be excessive, illegal, and void, first, because of the unconstitutionality of chapter 48, Id., and second, because of a failure to publish an itemization of the estimated needs for county highway purposes.

The Court of Tax Review disallowed this protest and protestant appealed. These contentions were before this court in cause No. 19698 Grubb v. Smiley, 142 Okla. 19, 285 Pac. 38, wherein we held that chapter 48, Id., was constitutional and that the estimate and appropriations for county highway purposes was required to be itemized as provided in sections 9695 and 9698, C. O. S. 1921. The record in this case shows that the board of county commissioners attempted to follow a procedure which was legal under the rule announced and that 42 items were specifically listed and estimates and appropriations were made for each, but that seven items, aggregating $99,146.97, included in the financial estimate and statement were omitted

from the publication of the financial statement and estimate. We have then the additional question of the effect of the failure to publish these items as required by law. This court in Chicago, R. I. & P. Ry. Co. v. Pourron, 118 Okla. 80, 246 Pac. 835, had under consideration a levy which was based on an appropriation, the amount of which had been increased by the excise board, over the amount of the estimate, without advertising, and this court said:

"The county excise board is without authority to increase an estimate made by a township for road dragging expense, unless the proposed increase be first advertised, as provided by section 9698, C. O. S. 1921."

In Pitts v. First Nat. Bank of Muskogee, 138 Okla. 284, 281 Pac. 133, this court said:

"Every municipality must submit its budget to the excise board of their respective counties. City of Sapulpa v. Land, 101 Okla. 22, 223 Pac. 640; Oklahoma News Co. v. Ryan, 101 Okla. 151, 224 Pac. 969; Ryan v. Roach Drug Co., 113 Okla. 130, 239 Pac. 913; Ryan v. Cook Building & Improvement Co., 113 Okla. 78, 239 Pac. 919; Jones v. Kennedy, 118 Okla. 224, 247 Pac. 53."

We call attention to the concluding words of section 9712, C. O. S. 1921, as follows:

"* * * And no levy for any purpose shall be valid, unless made according to the provisions of this article."

It appears from the evidence that the total amount of the estimate for county highway purposes included the amount of the items which were not published, and the Court of Tax Review held that the failure to include these seven items in detail in the published statement was not sufficient to invalidate the appropriation.

In our opinion, the requirement of our statute for itemization is mandatory, and that it is equally mandatory that there be a publication thereof. The taxpayers were entitled to know that these seven township culverts were to be constructed, and the failure to include these seven items in the published notice invalidates the appropriation to the amount of these seven items.

The protestee calls attention to the opinion of this court No. 18588, Turner et al. v. Cox, 138 Okla. 225, 280 Pac. 568, as sustaining its contention. The record in that case shows that under the heading "IX Constructive" there was the item "New Bridges $6,674," and that under the heading "IX W Roads and Bridges" each item for which an estimate was made was separately itemized. That presented a condition entirely different from that disclosed by the record in this case. Here there was no publication of the items. In that case the defendant in error in his brief said:

"An examination of the estimate sheet will disclose that each item appropriated under this section was itemized to the extent that the exact amount to be used for the construction of roads, construction of hard-surfaced roads, and for the construction of bridges was shown."

The case of Turner v. Cox, 138 Okla. 225, 280 Pac. 568, is not an authority on the point involved here. The Court of Tax Review erred in rendering judgment in favor of the protestee on this third ground of protest, and that judgment is reversed.

The fourth ground of protest involves a levy for the sinking fund for school district No. 22, Tulsa county.

This is discussed in the brief under three propositions, the first of which involves the interest and commission on outstanding bonds maturing during the next fiscal year. Protestee appealed from the judgment holding the appropriation excessive and presents two contentions: First, that it was authorized to permit a deduction from the balance on hand in the sinking fund on June 30, 1928, of an amount sufficient to pay interest coupons maturing after July 1, 1928, and prior to January 1, 1929; and, second, that the money had been remitted to the fiscal agency at New York, and therefore was not a balance on hand.

The county treasurer is authorized to deposit the funds under his control in certain banks, including the bank designated by the Governor as a fiscal agency, but the fact that the treasurer has deposited a part of the funds in the fiscal agency is no more reason for deducting that amount from the balance on hand than for deducting therefrom the amount deposited in a local bank. In determining the balance on hand there must be included funds deposited with the fiscal agency.

This court, in cause No. 20142, Coggeshall & Co. v. Smiley, 142 Okla. 8, 285 Pac. 48, announced the rule which is controlling, and held:

"An excise board is without authority of law to make an appropriation for the payment of interest on outstanding bonded indebtedness which matures subsequent to the fiscal year for which the appropriation is made."

Our attention is now called to section 4237, C. O. S. 1921, which requires a sufficient sum of money to be remitted to the state agency at least 15 days before the maturity of any bond or coupon payable in New York City, and it is now argued that a levy would have to be made during the preceding year in order to have the funds on hand to remit. We do not question the effect of that section, but we find nothing therein fixing the date of maturity of bonds. That section presupposes that public officials will fix bond maturities at a time when funds will be available for the payment of the interest 15 days prior to the maturity thereof. It is further contended that, because a tax was illegally collected during the preceding year, it must, under section 19, art. 10, of the Constitution, be used for the purpose for which it was collected. We do not so understand that section. Where money has been collected and is on hand at the close of a fiscal year and there is no valid claim against it, it becomes a part of the balance on hand in the fund for which it was collected, and must be carried over into the next fiscal year as a balance in that fund. When so carried over, it is available for use for any purpose for which that fund may be used. We do not think it necessary to discuss the matter further.

There was no error on the part of the Court of Tax Review on this proposition, and the judgment thereon is affirmed.

The second proposition involves the authority of the excise board to approve an estimate for the fiscal year beginning July 1, 1928, including an amount to pay interest for one year on bonds maturing January 1, 1929, and on which interest coupons matured on July 1st and January 1st. These bonds matured January 1, 1929, and an appropriation was necessary to pay the interest due July 1, 1928, and the interest due January 1, 1929. The protestant questioned a reserve made during the preceding fiscal year of an amount necessary to pay the interest maturity of July 1, 1928, but waived that protest in the Court of Tax Review, and this record shows that the sum of $3,125 necessary to pay the interest maturity of July 1, 1928, had been reserved. Since that amount was already on hand, it was necessary only to make an appropriation for $3,125 to care for the maturity of January 1, 1929. The appropriation actually made was for $6,250. Under this state of the record, the Court of Tax Review held that $3,125 was all that was necessary, and ordered a reduction in the amount of $3,125. This judgment is correct. If the $3,125 reserved had been shown in the balance on hand, an appropriation would have been necessary to pay the interest maturity of July 1, 1928, and January 1, 1929, but there would have been on hand $3,125 to pay the same and only $3,125 would have been required to be raised by taxation. The judgment of the Court of Tax Review on this proposition is affirmed.

The third proposition is based on two contentions, the first of which is that the number of levies for sinking fund purposes to retire bonds is the number of years the bonds run computed from the date of issuance to the date of maturity, and the second is that where no levy has been made for a sinking fund to retire bonds in preceding years, the accumulated amount may be appropriated in a single year.

The protestee admits that the decision in Going v. Atchison, T. & S. F. Ry. Co., 106 Okla. 258, 234 Pac. 346, is decisive of the last contention, but wants this court to disregard the rule therein stated and hold that the existing deficit in the sinking fund may be made up by a levy at this time. We decline to so hold. This court in Missouri, K. & T. Ry. Co. v. Goad, Co. Treas., 117 Okla. 129, 245 Pac. 617, said:

"Where a school district issues its bonds maturing in 25 years after the date of issuance, the excise board is without authority to levy, and the county treasurer is without authority to collect, any sum in excess of a sum sufficient to meet accruing interest and one-twenty-fifth of a sum necessary to meet the principal and retire the bonds at the expiration of the 25-year period, and to treat such bonds as serial bonds maturing in five-year-periods, and to levy and collect a graduated tax for the purpose of retiring one-fifth of such bonds at the end of each 5-year period is illegal and void."

There was no error in the judgment of the Court of Tax Review on this contention, and the same is affirmed.

We have discussed the question of the number of levies required to provide a sinking fund to retire bonds in cause No. 20142, Coggeshall & Co. v. Smiley, supra, and we announce the same rule herein.

There are a number of authorities from other states cited by the protestee in its brief, but our attention is called to nothing that causes this court to change the rule heretofore announced.

The protestant contends that the levy should not be uniform for the various years but should be reduced each year by the de-

duction of the amount received from interest on the sinking fund. To do this would require that a separate account be kept with each bond issue. This is not contemplated by our tax statutes and it is not necessary. The same result is produced by another method of handling the same. In order to understand this, we must keep clearly in mind the distinction between appropriations and levies. Where a proper division of the amount of the bonds requires $1,000 a year to be raised for the purpose of retiring the bonds and $1,000 a year to pay the interest on the bonds, the first levy would have to be in a sufficient amount to raise $2,000. In making the second levy we would have an appropriation in the same amount, $2,000, but the levy would be reduced for the reason that in computing the same there would be considered the balance on hand in the sinking fund which had accrued from interest on the investment of the sinking fund, income from assessments made on omitted property, and income from other sources. In making a levy for sinking fund purposes there should be included all of the outstanding bonded and judgment indebtedness, and a separate levy should not be made for each bond issue.

The Court of Tax Review held that on the 20-year bond issue dated April 1st there should be 19 levies, and on the 25-year bond issue dated April 1st, there should be 24 levies. Under the rule announced herein, this was an erroneous holding. The first levy could have been made on July 1, 1920. The tax for the last year would be due November 1st. The bonds would not mature until April 1st following. There is ample time to make 20 levies on the first issue and 25 levies on the second issue, and, there being time to do so, 20 and 25 levies, respectively, are required. The order of the Court of Tax Review was adverse to the protestant and the protestant did not appeal, but the protestee raised this question in its brief. Since the protestant did not appeal, we cannot reverse the holding of the Court of Tax Review on this contention, and it is therefore affirmed.

There was no error in rendering judgment on the fourth ground of protest for protestant, and the same is affirmed.

The sixth ground of protest involves the validity of a certain funding bonds issue by school district No. 26 of Tulsa county. Protestant contends that those bonds are void for the reason that the indebtedness funded was represented by certain judgments rendered by the district court of Tulsa county, which judgments were void for four reasons: (A) That the several petitions did not state facts sufficient to constitute a cause of action and were not aided by the other pleadings; (B) that the claims on which the judgments were rendered were illegal, excessive, and void; (C) that the judgments were fraudulently obtained; and (D) that the judgments were void for want of jurisdiction over the person of the defendant.

From the facts shown by the record and summarized by the protestant, as follows:

| Fiscal year | Approved estimates | Warrants issued | Judgments confessed on claims |
|---|---|---|---|
| 1916-1917 | $25,595.32 | $24,654.99 | $ |
| 1917-1918 | 51,868.81 | 51,534.71 | 31,839.75 |
| 1918-1919 | 64,300.00 | 64,221.75 | 35,000.00 |
| 1919-1920 | 47,045.67 | 47,045.67 | |
| 1920-1921 | 66,731.20 | 66,773.51 | |
| 1921-1922 | 67,251.37 | 67,183.63 | |
| 1922-1923 | 38,858.84 | 38,750.43 | 22,875.00 |
| 1923-1924 | 35,334.68 | 35,261.57 | 15,000.00 |
| 1924-1925 | 34,802.90 | 36,870.03 | 20,951.85 |
| Totals: | $431,687.79 | $433,296.29 | $125,666.60 |

The judgments set up in the foregoing table were six in number. They furnished a most interesting study:

| Case No. | Petition filed | Judgment rendered | | Funded |
|---|---|---|---|---|
| 6012 | 1-30-1919 | 1-31-1919 for | $31,839.75 | 2-17-1919 |
| 10595 | 12-16-1919 | 12-16-1919 for | 35,000.00 | 1- 2-1920 |
| 22145 | 1-27-1923 | 2- 3-1923 for | 22,875.00 | 2-21-1923 |
| 25942 | 2-15-1924 | 2-15-1924 for | 15,000.00 | 3- 5-1924 |
| 27842 | 7-29-1924 | 7-29-1924 for | 9,575.15 | 8-14-1924 |
| 30031 | 2- 3-1925 | 2- 3-1925 for | 11,376.70 | 2-17-1925 |

It clearly appears that four of the judgments were entered on the date the petition was filed, one on the date after the petition was filed, and one seven days after the petition was filed, and that one of the judgments was funded 14 days after its rendition, one 16 days after rendition, two 17 days after their rendition, and two 18 days after their rendition. In the first case there was no service and no answer filed, and the journal entry recites that the defendant appeared by the board of directors, waived a jury, and submitted the case for a hearing to the court. In each of the other cases answers were filed waiving the issuance and service of summons. None of these answers were signed by the board of education, and the execution of all of them was by certain individuals. To show the form we quote one instance, as follows:

"Arthur Sutton, President,
J. H. Egbert, Clerk."

The record shows that there was no attempt made by the school district officers to resist the rendition of these judgments. The petitions in the cases are wholly insufficient to state a cause of action against the school district. To show the form of

petition used, all of which were similar, we quote the material portion of the petition filed February 3, 1925, as follows:

"The plaintiff, R. F. Burt, as trustee, complains of the defendant and for his cause of action against it alleges and says:

"That the defendant is a municipal corporation duly organized and existing and doing business under and by virtue of the laws of the state of Oklahoma in Tulsa county, of said state:

"That said defendant is indebted to said plaintiff as trustee, for and on account of various and sundry items, for salaries, for services rendered. And for supplies furnished the defendant in the aggregate principal sum of eleven thousand three hundred seventy-six and 70/100 ($11,376.70).

"That the items of said indebtedness to said plaintiff are more fully set out in exhibit A to this petition attached hereto and made a part hereof and that said indebtedness is wholly unpaid.

"That said plaintiff, as trustee for the real parties in interest in this action, is entitled to maintain suit, and is entitled to judgment against said plaintiff for the amount as herein set out.

"Wherefore, plaintiff prays judgment against the said defendant for the sum of eleven thousand three hundred seventy-six and 70/100 ($11,376.70) dollars for attorney fees in the amount of one hundred sixteen and 30/100 ($116.30) dollars, same to bear interest at 6 per cent. per annum from date hereof and for all proper relief to which he may be entitled in equity."

To this petition was attached a list of claims, all of which were in the same form and from which we quote the last four items for illustration:

| Mrs. Joe Crockett | Salary | $ 90.00 |
| Crane Company | pump | 500.00 |
| Tidal Oil Company | fuel (Oct. Nov. Dec.) | 251.70 |
| Tidal Oil Company | fuel (Jan.) | 75.00 |

There was no verification of either the petition or the claims. To this petition an answer was filed on the same date which waived the issuance and service of summons and a jury and the time of setting of said cause for trial. A judgment was rendered in favor of the plaintiff on the day the petition was filed, as follows:

"Now, to wit, on this 3rd day of February, 1925, this cause came regularly on for trial in this court: plaintiff appeared in person and by A. E. Montgomery, his attorney, and the defendant appeared by its duly qualified and acting officers, and thereupon, in open court, all parties present, the plaintiff and defendant waive a jury and submit the cause to the court for hearing.

"And thereupon the plaintiff offered his evidence and rested. The defendant offered no evidence, and the court having heard the evidence and argument of counsel, and having examined the pleadings and been fully advised in the premises, finds for the plaintiff.

"The court finds that the defendant, board of education of the town of Glenpool, Tulsa county, Okla., is indebted to the plaintiff in this action in the sum of eleven thousand three hundred seventy-six and 70/100 ($11,376.70), and that the same is past due and payable, and that the plaintiff is entitled to recover said money from said defendant.

"It is, therefore, considered, ordered, and adjudged by the court that plaintiff have and recover judgment against the said defendant for the sum of eleven thousand three hundred seventy-six and 70/100 ($11,376.70) dollars, plus attorney fees in the amount of one hundred sixteen and 30/100 ($116.30) dollars, with interest thereon at 6 per cent. from date hereof, and costs of this action taxed at $_____."

On the date the judgment was rendered, notice was given of intention to fund the same on February 17, 1925, and on that date the judgment was funded. It is not necessary to comment on each of these cases separately, and to do so would make this opinion unduly lengthy.

We have called attention to this one instance for the purpose of showing that the school district officers made no defense to the suit, but, in effect, consented to the rendition of this judgment and the funding thereof. Their conduct in this instance, as disclosed by this record, is typical of their conduct in all of these cases. This record shows that in a period of nine years the officers of this school district consented to, if they did not connive at, the rendition of judgments against the school district to the amount of $125,666.60, when the total of the appropriations for the same period was only $431,687.79, and that the judgments were immediately funded. This court can arrive at only one conclusion, and that is the one reached by the Court of Tax Review, that this entire transaction constituted a fraud on the taxpayers of this school district and that it was perpetrated by the officers of the school board and the various claimants whose claims appear in this record.

We think it necessary to refer to only one authority. In O'Neil Engineering Co. v. Incorporated Town of Ryan, 32 Okla. 738, 124 Pac. 19, this court had under consideration the provisions of sections 26 and 27 of art. 10 of the Constitution, and said:

"The intention and plain effect of the provision of the Constitution under consideration is to require municipalities to carry on their operations upon the cash or pay as you go plan. The revenues of each year must take care of the expenses of such year; and any liability sought to be incurred by contract, express or implied, executed or executory, in excess of such current revenue, in hand or legally levied, is void, unless it be authorized by a vote of the people, and within the limitation therein required. Campbell v. State ex rel., 23 Okla. 109, 99 Pac. 778; City of Ardmore v. State ex rel., 24 Okla. 862, 104 Pac. 913; Spilman v. City of Parkersburg, 35 W. Va. 605, 14 S. E. 279; Litchfield v. Vallou, 114 U. S. 190, 5 Sup. Ct. 820, 29 L. Ed. 132; San Francisco Co. v. Brickwedel, 62 Cal. 641; McGowan v. Ford, 107 Cal. 177, 40 Pac. 231; Sutro v. Pettit, 74 Cal. 332, 16 Pac. 7, 5 Am. St. Rep. 442; First National Bank v. Doon Dist. Tp., 86 Iowa, 330, 53 N. W. 301, 41 Am. St. Rep. 489; Lake County v. Rollins, 130 U. S. 662, 9 Sup. Ct. 651, 32 L. Ed. 1060. In the Campbell case, supra, Mr. Justice Williams, in discussing this provision, says: 'The settled purpose has been to place restrictions and limitations upon the taxing power by a restriction upon the outlay of the money after it has been collected by the people. Under this provision, the government is dependent from year to year upon the periodical vote of supplies.' "

"And further: 'No one idea stands out more clearly than that barriers should be erected against the creation of municipal indebtedness' "

—and held to the same effect.

As shown by this record, the petitions did not state a cause of action. There was nothing in them to show that the claims sued on were legal, and if they were legal, there was nothing to show why warrants were not issued in payment thereof, and there was nothing to show that they were contracted within the appropriations made for the various fiscal years.

An independent school district is a body corporate. Section 10406, C. O. S. 1921. The clerk may or may not be a member of the board. Section 10413, C. O. S. 1921. The treasurer is not a member of the board. Section 10409, C. O. S. 1921. This record shows that the answers filed in these cases were signed by not to exceed one member of the board.

The record recites the execution of a resolution authorizing the appearance and waivers. Both the Constitution and the statutes prohibit the incurring of indebtedness in excess of the estimate for the year, and those prohibitions cannot be avoided by a resolution authorizing some member of the board of education to confess judgment on illegal claims. The effect of those answers was to confess judgment.

"A judgment resulting from collusive acts of the parties, which amounts to legal fraud, is subject to direct or collateral attack." Schulte v. Board of County Commissioners, 119 Okla. 261, 250 Pac. 123.

The question then arises as to the effect of the funding judgments. The protestee contends that those judgments are res adjudicata and cannot be attacked collaterally, notwithstanding the invalidity of the judgments funded.

In order for a judgment to be conclusive of the rights of the parties or their privies it must be obtained without fraud or collusion. The citation and quotation just made is determinative of that proposition, but in addition thereto, we call attention to Threadgill v. Peterson, 95 Okla. 187, 219 Pac. 389, wherein this court held that taxpayers have a right to question judgments the effect of which is to impose illegal taxes on their property, and that acquiescence or connivance of school district officers in the rendition of a judgment against a school district on contracts in excess of the approved estimate for the fiscal year constitutes fraud in law against the school district and the taxpayers therein. It was therein said:

"Taxes can be levied and the moneys arising therefrom expended only as provided by express law. More than once this court has said as much, but the already heavily burdened municipalities are constantly made to know that their administrative officers not unknowingly undertake to incur indebtedness entirely without the sanction of law. In the case at bar this was not only done, but the officers lent their aid to a species of prostitution of the court in an attempt to make their unauthorized contractual acts effective. The success of such attempts makes the courts parties to lawlessness; makes the citizens' property subject. not to the burdens of taxation the law through its enforcement machinery imposes, but to the arbitrary will of individuals who for the time being are in office. * * *

"The statute hereinabove quoted, which finds its sanction in the constitutional provisions of this state (see Williams' Annotated Constitution, section 26, art. 10) is too plain for any man capable of holding such office to mistake its meaning. To pretend to excuse its violation on the ground of necessity is merely in another form the plea in mitigation of punishment that necessity

prompted larceny.' It furnishes neither a reason nor an excuse which, when it calls, finds the law 'at home.' It is outlaw, in the sense it is outside of any sanction of the law, except that the law in its zeal to save without loss the less guilty makes a liability personally on the officers entering into such agreement."

In order to determine whether or not there was fraud or collusion in these funding judgments we must look to the entire record. When we do so, we find that the original petitions did not state a cause of action; that appearance was attempted to be entered and service of summons was waived; that no attorney was employed and no defense made; that judgments were permitted to be taken immediately after the filing of the petitions; and that no motions for new trial were filed and notices of appeal given. A clear case of collusion between the officers of the school district and the plaintiffs in those cases was shown. The collusion did not stop with the rendition of those judgments. Immediately after the rendition thereof, notice was given by the officers of the school district of the intention to fund the judgments, and as early as possible thereafter these judgments were submitted to the trial court for funding. In the instance cited the judgment rendered on February 3, 1925, was ordered funded on February 17, 1925, and in each of the instances the funding was ordered within 18 days after the judgment was rendered.

In the instance cited the funding judgment recites:

"That said bonds have been duly executed by the president and clerk of said school district, and have been presented to this court for approval and signature of the judge thereof"

—and the bonds were on that day signed by the district judge. The bonds in each instance were prepared in advance of the judgment and signed on the day the judgment was rendered. There was nothing left undone by the school district officers to have these judgments funded at the earliest possible moment. It is apparent that the collusion continued up to and including the judgments ordering the funding.

In our opinion, the facts shown in this record places this case clearly within the rule announced by this court in Eaton v. St. Louis & S. F. Ry. Co., 122 Okla. 143, 251 Pac. 1032. The Court of Tax Review was of the same opinion and applied the rule therein announced. We do not think it necessary to quote extensively from that opinion. It speaks for itself. We desire only to state that the rule therein announced applies to the facts in this case and that every contention made by the protestee on the appeal is answered by the rule announced in that case.

There was no error in the Court of Tax Review rendering judgment for the protestant on this ground of protest, and the same is affirmed.

The cause is remanded to the Court of Tax Review for further proceedings not inconsistent herewith.

MASON, C. J., LESTER, V. C. J., and CLARK, RILEY, HEFNER, CULLISON, and SWINDALL JJ., concur. HUNT, J., disqualified.

Note.—See "Highways," 29 C. J. §496, p. 732, n. 27. "Judgments," 34 C. J. §496, p. 278, n. 89; §866, p. 566, n. 52. "Schools and School Districts," 35 Cyc. p. 1044, n. 31, 32.