**ABERNATHY, Agt., et al. v. HUSTON, Co. Treas.**

No. 21497. Nov. 14, 1933.

J. B. Dudley, Adelbert Brown, Gordon Stater, Mont F. Highley, L. D. Threlkeld, O. K. Wetzel, Snyder, Owen & Lybrand, Shirk, Danner & Phelps, Wilson & Wilson, & Owens, A. M. Beets, Embry, Johnson, Crowe & Tolbert, and S. K. Bernstein, for plaintiffs in error.

Lewis R. Morris, Co. Atty., and B. C. Logsdon, Asst. Co. Atty., for defendant in error.

BUSBY, J. This action was commenced in the district court of Oklahoma county on the 26th day of March, 1929, by the county treasurer of Oklahoma county, as plaintiff, against J. N. Abernathy, agent for J. P. Doyle, and several hundred other persons as defendants. In his petition the plaintiff attacked the validity of a judgment or purported judgment of the district court of Oklahoma county bearing date of June 29, 1928, and sought to vacate the same. Answer was filed on behalf of the defendants, and the issues joined by the pleadings were tried to the court. Judgment was rendered on October 28, 1929, declaring the previous purported judgment invalid and adjudging that the plaintiffs (defendants in the previous action) had a prima facie valid defense to each of the causes of action upon which such previous judgment was based, and ordering that the same be vacated.

From this decision vacating the former judgment and reinstating the cause for trial upon the issues framed by the pleadings before such judgment was rendered, this appeal has been perfected. The previous judgment of the district court of Oklahoma county was rendered in an action brought by protesting taxpayers who sought to recover in that action more than three-quarters of a million dollars in protested taxes. The judgment vacated affirmed their right to recover more than a half million dollars of this money. If the judgment of vacation rendered in the trial of the case at bar was proper and is permitted to stand, the defendants will be compelled to establish upon a trial of the issues the merits of the causes of action upon which they sought to recover the last-mentioned sum of money. On the other hand, if the judgment of the trial court in this case is reversed, the rights of the defendants to receive this enormous amount of money from Oklahoma county pursuant to the provisions of the previous alleged judgment is approved regardless of the validity of their claim to the same.

In this connection we must and do recognize the difference between a judgment and the claim or demand upon which the same is based. It is possible to have a valid judgment based upon an invalid claim and an invalid judgment based upon a valid claim. Generally speaking, the validity of the claim upon which the judgment is based has nothing to do with the validity of the judgment. However, in some instances, the validity of the claim becomes an important factor in determining the validity of the judgment based upon the same. This is frequently the case where the judgment attacked is against the municipality and the attack is based upon the ground of fraud or collusion on the part of the municipal officers representing or purporting to represent the municipality. The validity of the claim is likewise of importance in determining whether a voidable judgment should be vacated. It being necessary to establish in such cases prima facie existence of a valid defense. Reference to these matters will be made in the subsequent portions of this opinion. At this time we address ourselves to an analysis of the situation presented by the case at bar.

The plaintiffs in error in this court were the defendants in the trial court, and were plaintiffs in the previous action in which the judgment attacked was rendered. As above stated, they were protesting taxpayers of Oklahoma county, and for the purpose of convenience will be subsequently referred to in this opinion as such. The defendant in error, county treasurer, was at all stages of the proceedings in both cases the adverse party. On the 26th day of April, 1928, the protesting taxpayers commenced their action in the district court of Oklahoma county against the county treasurer of Oklahoma county. The case was styled J. N. Abernathy, Agent of J. P. Doyle, et al. v. E. Bonaparte, and was numbered 55507. There were in that action approximately 2,500 plaintiffs, who each individually sought the recovery of certain alleged illegal taxes said to have been previously paid by them under protest. The validity of a number of levies made by the county excise board for the

fiscal year ending June 30, 1928, was attacked for various reasons which need not be herein discussed. A large portion of these protesting taxpayers also claimed their right to recover a portion of the protested taxes on the theory that the assessed valuation of their property, both real and personal, had been improperly and illegally increased or determined. The complaint last mentioned formed the basis of causes of action numbered, respectively, 11 and 12 in the petition. In all, there were twelve separately numbered causes of actions, each purporting to state a different theory of or right to recover in whole or in part the taxes paid under protest. The eleventh cause of action alleged an unauthorized increase in the assessed valuation of real estate belonging to each of several hundred of the protesting taxpayers. It alleged that such increase in assessed valuation had been made without proper notice to the taxpayers. The 12th cause of action alleged that the assessed valuation of the personal property of a large number of the protesting taxpayers had been determined without the publication of notice as specified in section 9664, O. O. S. 1921. This cause of action was based upon the theory that such application of notice was a jurisdictional prerequisite to the imposition of a valid tax.

Each of the plaintiffs could have been required to file a separate action setting forth his particular grievance. However, owing to the enormous number of taxpayers interested, it was agreed in writing between the various attorneys representing them and the attorneys representing the county treasurer that all might join as plaintiffs in one action and that no objection to the joinder would be made. An oral understanding existed between the attorneys to the effect that 12 individual suits should be filed by separate taxpayers, each of such suits to involve a single cause of action corresponding to one of the causes of action in the principal or consolidated case. It was understood that these individual suits, which were commonly termed "test" cases, were to be tried in advance of the principal or consolidated case, and when the judgment in the "test" cases became final, the rule therein established should govern in the principal or consolidated case. This understanding seemed to have been tacitly agreed to by the learned trial judge who later tried the cases. However, he decided that in connection with the test cases an appeal should be taken to the Supreme Court of the state of Oklahoma in order that the correct rule of law therein announced might be established. He suggested to the county attorney that such procedure be adopted. Of course, a trial judge does not have any authority to direct a party litigant to take an appeal, but such a requirement, as a condition to applying the rules of law to a principal case without further consideration thereof, might well be made by the trial court, since the power to apply or refuse to apply such tentative rule of law to the subsequent litigation would rest with the trial court regardless of the existence of any agreement between litigants. The test suits above referred to were filed in accordance with the understanding between the parties thereto.

The case of Willa M. Gibbons v. Bonaparte, district court cause No. 55518, was the test case which corresponded to the eleventh cause of action in the consolidated case, and the case of J. M. Gayler v. Bonaparte, district court No. 55519, was the test case which corresponded to the twelfth cause of action in the consolidated case. These two cases were tried to the court and a judgment was rendered in favor of the protesting taxpayers in each of them on June 29, 1928. The main or consolidated case was not submitted to the trial court for judicial consideration on that date, although there is some rather indefinite testimony in the record indicating that reference was made thereto by the attorneys at the trial of the two test cases. A motion for a new trial was filed in the two test cases above referred to and subsequently overruled by the trial court. No appeal, however, was taken in either of them. In the meantime, and immediately after the judgment in the test cases had been rendered, and without waiting for the judgments to become final either in the trial court or after an appeal to this court, the attorneys for the protesting taxpayers, acting in conjunction with the then assistant county attorney, W. F. Smith, but without consulting either the city attorney of Oklahoma City or the school district attorney of the Oklahoma City school district, began the preparation of a journal entry of judgment on the eleventh and twelfth causes of action in the consolidated case, which journal entry of judgment recited the rendition of judgment on those two causes of action as of the date of trial of the two test cases. It recited that the court had rendered judgment in favor of approximately 1,900 other protesting taxpayers in such causes of action on the 29th day of June, 1928. The individual taxpayers entitled to recover and the amount each should receive was indicated by a schedule attached to the journal entry. This schedule was agreed upon be-

tween Brown & Stater, the principal attorneys for the protesting taxpayers, and the then assistant county attorney, W. F. Smith. The aggregate sum which the protesting taxpayers were entitled to recover, as fixed by the schedule attached to the journal entry, was $591,719.40. The journal entry was then taken by one of the attorneys for the taxpayers to the office of Judge Chambers at the courthouse in Oklahoma City. This attorney returned a few days later and obtained the journal entry, which in the meantime had been signed by the district judge. The journal entry was then filed with the court clerk and recorded. The journal entry was filed as of the 7th day of July, 1928. At the time it was signed by the district judge it purported to bear the approval of practically all of the attorneys interested, except that of the attorney for the city of Oklahoma City and for the Oklahoma City school district. Oklahoma City and Oklahoma City school district were each vitally interested in the outcome of this litigation. Of the $591,719.40 involved therein, Oklahoma City would have been entitled to receive more than $200,000, as its proper distributive share thereof in the event the protesting taxpayers should not recover, and the Oklahoma City school district would be entitled to receive almost that amount. These corporations did not formally intervene in the action. However, their respective attorneys had indicated their interest in the same and their disposition to participate in the trial thereof. This interest had been recognized by both the attorneys for the taxpayers and the assistant county attorney, and, in the stipulation respecting the joining of causes of action, the attorney for the school district had been requested to and did join. No doubt both the school district and the city would have formally intervened had it occurred to their legal representatives that the cause might be disposed of informally in the event of their failure to intervene. Although the interest of the school district and the city had been previously recognized by both the attorneys for the taxpayers and the assistant county attorney in charge of the litigation for the county, neither the school district attorney nor the city attorney was advised that the journal entry of judgment had been prepared, signed, and filed in the consolidated case, and neither of them learned of the existence of this purported judgment until January, 1929, which was long after the funds in the hands of the county treasurer had been paid to a representative of the taxpayers pursuant to the provisions of the journal entry. Not only was the inter-

est of the school district in this respect ignored, but, according to the testimony of the attorney for the school district, he inquired during the latter part of the month of June, 1928, what action, if any, had been taken on the tax cases, and was advised by the then assistant county attorney, Smith, that none had been taken, and he then requested that no action should be taken until he should return from his vacation on which he was about to start. It was during this vacation that the journal entry complained of was procured in the manner above designated. Upon the return of the school district attorney he inquired of the assistant county attorney what action had been taken in connection with the tax cases and was advised that none had been taken. This occurred in August of 1928. The learned trial judge who signed the journal entry had no recollection of having signed the same, and could only advise the trial court in the trial of the case at bar that it was his custom when journal entries were presented to him, bearing the approval of the attorneys in the case, to sign the same without scrutinizing their contents, relying upon the attorneys to correctly prepare the journal entry. He also testified that, when the journal entry of judgment complained of in this action was presented to him:

"Q. Do you have any independent recollection of having signed that? A. I haven't any independent recollection of having signed it—those matters were never brought to me. Q. They were never presented to you? A. Not as far as the contents are concerned. I am satisfied the case was never presented except for my signature. The journal entry was O. K.'d by all the lawyers and I signed it without looking at journal entry at all."

After hearing the evidence in the action to set aside the judgment or purported judgment, the trial court in the case at bar entered its judgment vacating the same, which judgment of vacation seemed to have been rendered upon two theories, either of which is sufficient to support the result announced. The first, that no judgment was, in fact, rendered. Second, that if a judgment was, in fact, rendered, it was rendered under such circumstances as to amount to a legal fraud. A review of the record convinces us that the judgment of the trial court should be sustained upon both theories.

The petition filed in the case at bar alleged that the journal entry of judgment sought to be set aside was prepared pursuant to an agreement between counsel, and that the signature of one of the district judges was procured by certain fraudu-

lent misrepresentations and that such journal entry was presented to and recorded by the court clerk. The petition is somewhat defective in the manner in which it presents the issues of whether a judgment was, in fact, ever rendered. However, the facts stating the manner in which the alleged judgment came into existence are pleaded, and when considered as a whole raised the legal question: Was the alleged judgment anything more than an erroneous record reciting the existence of a judgment which had, in fact, never been rendered? The sufficiency of the petition was not challenged by demurrer. Issue was joined by answer and the cause proceeded to trial.

An analysis of the evidence convinces us that no official action was ever taken by the district court of Oklahoma county by way of rendering judgment; that if the purported judgment was a judgment at all, it became such by the signature of a judge of that court on a journal entry and the recording of that instrument as found by the trial court. We quote the findings of fact as follows:

"* * * There has in my judgment in this case resulted in the signing of a journal entry purporting to be a judgment which cannot be sustained.

"Now, if that journal entry was ever judgment of Judge Chambers or the district court, it was made so, not on any trial of issues or any hearing at all, but was made the judgment of the court by the signing of that journal entry by the judge sometime in the summer of 1928 when it was presented to him. * * *

"I think the suggestion was well made that a judgment must be based on a hearing or it must represent the conclusion of the court—to say the least of it, which followed from some consideration or hearing on trial."

And in the journal entry the following finding is incorporated:

"The court further finds that the allegations of plaintiff's petition have been fully sustained by the evidence and that the judgment heretofore rendered by the district court of Oklahoma county, Okla., on the 29th day of June, 1928, in said cause No. 55507 upon said eleventh and twelfth causes of action therein, should be set aside for conduct on the part of plaintiffs, acting through their attorneys, which amounted to a fraud upon the court, **and without a trial of the issues in said causes of action eleven and twelve, and was therefore not a valid judgment.**"

A more accurate selection of language could have been made by the trial court.

Reference could have been made to the record of the alleged judgment as an "erroneous record of a purported judgment" rather than as a judgment. However, we should look to the substance of the language used rather than the letter of any particular portion thereof. The evidence amply supports the conclusion of the trial court. As we have already seen, Judge Chambers testified, in substance, that the case was never presented to him other than by the presentation of a journal entry for signature.

A judgment is the solemn pronouncement of a court. The act of the clerk in entering a judgment is ministerial in its nature and constitutes evidence of its existence. The solemn pronouncement of the judgment by the court is an indispensable prerequisite of the entry by the clerk. Freeman on Judgments (5th Ed.) p. 77, par. 47; Bancroft's Code Practice, page 2232, par. 1711.

It is said in the same work at page 2441:

"A judgment entered by the clerk without authority of law, as where it is without previous judicial action or is contrary to the direction or order of the court, may be vacated by the court of its own motion at any time. This is true of judgments by default entered by the clerk where he has no authority to do so."

Thus the action of the clerk in entering judgment upon a verdict without the prerequisite pronouncement of judgment by the court was declared a nullity in the case of Maroney v. Tannehill, 90 Okla. 224, 215 P. 938. The gist of the court's holding in that case is expressed in the opinion in the following language:

"The court having failed to render judgment on the verdict of the jury and to pronounce the sentence of the law upon the matters reserved unto itself, did the clerk have the power to do so?

"The functions of the clerk are purely ministerial and he only has power to enter upon the judgment docket of the court the sentence of the law as declared by a duly constituted judge, and has not the power to change, add to, or take away therefrom. The action of the clerk in rendering judgment and entering up the same on October 30, 1915, is a nullity and determines no matter in issue, nor the rights of any party litigant."

This jurisdiction has always recognized the distinction between the person of the judge and the court over which he presides. No authority is conferred by law upon a judge as an individual to render a final

judgment pending in the court. C. O. S. 1921, sec. 662, defines a judgment as follows:

"A judgment is the final determination of the rights of the parties in an action."

Therefore, the mere signature of a judge to a journal entry without a final determination of the rights of the parties does not amount to a judgment of the court. A signed journal entry, in itself, without a determination of the rights of the parties in the action, does not amount to a judgment. The journal entry is for the purpose of assisting the clerk in making up the record of some judicial action and determination had previous to the signing of the journal entry. The judge's signature alone does not give validity or strength to a record thus compiled and denominated "Journal Entry," if the same is erroneous. In fact, the signature of the judge is not an indispensable part of the journal entry. Boyington v. Crockett, 12 Okla. 57, 69 P. 869. As was said in the case of Hurley v. Childers, 116 Okla. 84, 243 P. 218:

"It is the duty of the clerk to keep a journal, and enter all judgments of the court thereon; and regardless of who prepares the journal entry of judgment, which is entered on the journal, it becomes the act of the clerk."

Therefore, standing alone, and without a previous determination of the rights of the parties to a pending action, a mere journal entry signed by the judge does not constitute a judgment.

In cases where erroneous judgments are entered, this court is committed to the doctrine that the same may be subsequently corrected. Speaking through Mr. Justice Kane, we said in the case of Cowokochee v. Chapman, 76 Okla. 1, 183 P. 610:

"The cases are in conflict on the question whether evidence dehors the record is admissible to prove and correct a clerical mistake or misprision of the clerk in the entry of a judgment. This court, however, although formerly holding to the contrary, (Bank of Kingfisher v. Smith, 2 Okla. 6, [35 P. 955]), is now committed to what is called the more liberal rule, that the court, in furtherance of justice and for the purpose of making its records speak the truth, may proceed, on any evidence satisfactory to itself, whether oral or documentary, whether record or otherwise, and it is for the court to say what is the kind and amount of evidence requisite to show that the amendment should be made. Clark v. Bank of Hennessey, 14 Okla. 572, [79 P. 217]; Jones v. Gallagher, supra, [64 Okla. 41, 166 P. 204]. The rule, however, is subject to the limitation that where there is no record or quasi record evidence, the court should act with great care and caution. Jones v. Gallagher, supra."

There certainly is no distinction in principle between the correction of an erroneous record of a judgment previously rendered and a correction or cancellation of an erroneous record of a judgment which was in fact never rendered. In the case of Cone v. Harris, 104 Okla. 114, 230 P. 721, this court said in the syllabus:

"A court of equity will relieve against the enforcement of a purported judgment, where no such judgment was, in fact, rendered; or, against the enforcement of a judgment obtained secretly under such circumstances as to amount to a fraud upon the court, or upon the rights of the party against whom the judgment was obtained."

That case involved a state of facts presenting elements similar to those presented in the case at bar. In disposing of the issue therein it was said:

"After a careful examination of the record presented we think the proper conclusion is that the rights of the parties as to the 40 acres (homestead allotment) were never adjudicated; that in the hurry and dispatch of business the trial judge was misled into signing a journal entry covering the 40 acres, when no judgment with reference thereto had ever been arrived at, determined, or announced. And whether it was the fixed purpose to mislead the trial judge, or whether it was inadvertent and without wrongful intention to injure the plaintiff, it is not necessary to decide, for, whichever it was, the effect was the same; that is, the trial judge was misled into signing the journal entry, and no judgment was in fact rendered covering the property involved in this action."

The fact that there existed a written stipulation to waive objection to the joining of parties plaintiff and causes of action as well as an oral agreement between counsel that the matter of the consolidated case should be governed on questions of law by rules announced in the test case, would not dispense with the necessity of a judicial action on the part of the court in the consolidated case. The rules of law announced in the test cases could be made applicable to the consolidated case only by the district court trying the same, and then only when the issues as set out in the consolidated case were being judicially considered on a hearing thereof. The stipulation of counsel could not control the action of the trial court in that respect.

While the signature of the trial judge to a journal entry does not amount to a

190

judgment of a court, no reflection can be cast upon the trial court for signing the journal entry in the case at bar. Trial judges may and do rightfully rely upon practicing attorneys, who are officers of the court, to prepare and present journal entries which correctly reflect the previous judicial action of the court. The learned trial judge who heard the tax cases in the first instances was in no wise derelict in his duty when he affixed his signature to a journal entry prepared and approved by the attorneys in the case. However, it is the duty of attorneys in preparing journal entries of the court to correctly prepare the same in order that the record of the court may speak the truth.

The purported judgment entered on the record of the district court of Oklahoma county in connection with the protest tax case was, in fact, no judgment at all. However, if we assume as a basis of our further discussion of this case that this record of judgment was, in fact, a judgment, the decision of the trial court in the case at bar still must be sustained upon the theory that the manner in which it came into existence constituted a constructive or legal fraud upon the general property owning taxpayers of the municipality and quasi municipalities, whose funds were affected thereby, as well as upon the court rendering the same.

Constructive and legal fraud are synonymous terms, and constructive fraud differs from actual fraud in that in the latter a dishonest purpose and an intent to deceive are essential component elements, whereas in the former the presence of these elements need not appear. 26 C. J. 1061. Ordinarily, the fraud essential to vacate a judgment on direct attack must be actual, as distinguished from constructive (15 R. C. L. page 763), and must result in depriving the party of a fair opportunity to present his case. Brown v. Trent, 36 Okla. 239, 128 P. 895. A slightly different rule obtains, however, in the case of municipalities, which are represented in court by persons whose authority is defined by law and whose duties are prescribed thereby. In such cases the real parties at interest are not the officials representing the municipal or quasi municipal corporations, but rather the general property owning taxpayers thereof. In such cases, where judgments are obtained against municipalities under circumstances amounting to constructive or legal fraud, as distinguished from actual fraud, they may be vacated, such constructive or legal fraud exists in the case of collusion between the representative of the municipality and those seeking to obtain a judgment against the same when such collusion results in obtaining a judgment on an illegal demand against the municipality. In re Gypsy Oil Co., 141 Okla. 296, 285 P. 67.

The judgment attacked in this action is surrounded by a set of circumstances which in our opinion amounted to legal fraud upon the county and other political subdivisions as well as upon the court rendering the same. The eleventh cause of action in the consolidated case was predicated upon the theory that the assessed value of real estate of a larger number of taxpayers had been increased without proper notice. In the test cases involving this issue one taxpayer established to the satisfaction of the trial court that he did not have a proper notice of the increase in the valuation of his property, and that he was entitled to recover on this proof, and without any trial in the consolidated case, hundreds of other protesting taxpayers were permitted to recover without establishing as a matter of fact their lack of notice or knowledge of the increase in assessed valuation. This proof was an indispensable prerequisite of the rights of each of these taxpayers to recover anything on the theory relied upon. An examination of the record in the case at bar established that postcard notices were mailed to the various taxpayers advising them of an increase in the assessed valuation of their real estate, which notice, if received in proper time, was amply sufficient to charge each of the taxpayers receiving the same with knowledge of what had taken place.

The judgment in the consolidated case affected hundreds of thousands of dollars of school district and city money. Yet neither the city attorney nor the school district attorney was advised of its existence for more than six months after its entry, and, in fact, the school district attorney, according to his testimony, was misled into believing that no action at all had been taken. Likewise, the trial judge, who approved of the arrangement, had coupled his approval with an admonition to the assistant county attorney to appeal the test cases, and he had been prevailed upon to sign a journal entry which retroactively brought into existence a judgment as of a time when the decision in the test cases had not even become final in the trial court. In our opinion there was in this case such a total disregard of the formalities which must surround a judicial determination of the rights of parties as to taint the pur-

ported judgment with legal fraud and render the same voidable in a direct attack thereon. In so far as this action attacks the previous judgment on the ground of fraud, it is equitable in its nature. As was said in the case of Schulte v. Board of County Commissioners, 119 Okla. 261, 250 P. 123.

"The attack on a judgment rendered by a court on the ground of fraud is in the nature of an equitable proceeding."

Being equitable in its nature, fraud may be shown by facts and circumstances surrounding the transaction tainted thereby In this connection we said in the case of Bottoms v. Neukirchner, 29 Okla. 104, 116 P. 434:

"Fraud must be shown and proved at law. In equity it suffices to show facts and circumstances from which it may be presumed."

And again, in the case of Cooper v. Gibson, 69 Okla. 105, 170 P. 220, it was stated in the second paragraph of the syllabus:

"A wide latitude is allowed in cases of fraud, and circumstances altogether inconclusive, if separately considered may, by their numbers and joint operation, especially when corroborated by moral coincidences, be sufficient to constitute conclusive proof."

In the light of the foregoing authorities, the judgment of the trial court in the case at bar, declaring that the previous judgment of the district court of Oklahoma county was voidable and should be vacated for the reason that it was obtained under facts and circumstances amounting to legal fraud, is amply supported by the record in this case, and since it is not against the clear weight of the evidence, we will not disturb the same upon appeal.

This brings us to a consideration of the further question: Was the trial court justified under the evidence in this case in finding that there existed prima facie a valid defense to the cause of action upon which the purported judgment was based? In the petition in the case at bar such defenses were alleged to exist.

The issues which that judgment purported to settle concerned only causes of action in the principal case numbers 11 and 12. The issue raised by the eleventh cause of action was that a certain portion of the taxes against the property of each of the protesting taxpayers was illegal because there had been an increase in the assessed valuation without proper notice to the interested taxpayer.

The issue of law is settled in the case of Hays v. Bonaparte, 129 Okla. 258, 264 P. 605, the syllabus in that case reading as follows:

"When property has been voluntarily listed for taxation by the owner and the valuation placed thereon by him is increased by the assessor or by the board of equalization without timely notice to him or without his knowledge or consent and he is thereby deprived of his right of appeal, his remedy is to pay the taxes under protest and proceed in accordance with the provisions of section 9971, C. O. S. 1921."

As announced in that case, it is essential for the protesting taxpayer seeking recovery to have been without either notice or knowledge of the increase in valuation of which he complains. In other words, it must appear that he was deprived of an opportunity to pursue the regular statutory course for complaining of the increase in valuation by lack of knowledge or notice thereof. In the case at bar, as we have previously observed, it was shown that the assessor mailed out postcard notices to each of the taxpayers affected by increased valuation. The fact that such postcards were mailed created a presumption that the complaining taxpayers received them through the mail. The testimony of the deputy county assessor concerning the mailing of these postcards is not refuted in the record by the testimony of any taxpayer denying the receipt thereof. The record does disclose that a number of cards were returned by the postal authorities, but the attorneys for the taxpayers did not deem this of sufficient importance to establish by the returned postcards which, if any, of the protesting taxpayers in this case did not receive a notice. It thus appears that, under the rule announced in the case of Hays v. Bonaparte, supra, a prima facie showing was made that the interested taxpayers had knowledge of the increase in assessed valuation, and therefore a defense was shown to exist to one of the causes of action upon which the purported judgment was based. The twelfth cause of action upon which judgment was purported to have been rendered in favor of the protesting taxpayers was based upon the theory that the publication mentioned in section 9664, C. O. S. 1921, is a condition precedent to a valid assessment of personal property. The issue presented by this cause of action is stated by the plaintiffs in error in their brief as follows:

"The issue in the Gayler Case was that any personal tax where the personal assessed valuation was not published as required

by section 9664, C. O. S. 1921, that such tax was illegal, in that compliance with section 9664, C. O. S. 1921, was a condition precedent to the levy of a valid tax. This was the same issue as the twelfth cause of action in the Abernathy Case."

A question of law was thus presented on which this court has held directly opposite to the theory of the protesting taxpayers. Our declaration of the law upon this point is found in the case of Bonaparte v. American Vinegar Mfg. Co., 161 Okla. 54, 17 P. (2d) 441. In that case this court said in syllabus paragraph 6:

"Compliance with section 9664, C. O. S. 1921, by the county assessor is not a condition precedent to the placing of personal property upon the assessment rolls."

In the body of the opinion in the same case it was said, speaking through Mr. Justice Swindall:

"If the county assessor can secure a bid from some newspaper to print the notice provided for in section 9664 for the amount the law authorizes to be paid the publisher and the board of county commissioners include in their annual estimate an item for such publication and the excise board approves the estimate and levies a tax for that purpose, we think that the assessor should comply with that section relating to his official duties, but we do not think that a failure on the part of the county assessor to comply with the section is a condition precedent to the county assessor placing any assessment upon the assessment rolls and does not deprive the county equalization board of the power to consider and equalize assessments and perform the other duties required of the county equalization board."

Therefore, as to the twelfth cause of action, a defense existed as a matter of law. It is said by the protesting taxpayers that this decision was announced subsequent to the signing of the journal entry in question in this controversy. This is correct. That fact has no bearing on the question involved. The question is, Did the county have a defense? That decision is a declaration of the law retroactive in effect, and determines the same as it existed at the time that the journal entry in this case was signed. It established the existence of a defense.

To summarize, it appears that the judgment of the trial court is amply sustained by the record; that the trial judge was justified in finding that ground existed for setting aside the purported judgment:

First, on the theory that such judgment was never in fact rendered; second, on the theory that a legal fraud was practiced in connection therewith. It further appears that on both of the causes of action on which the purported judgment was based, a prima facie showing was made as to the existence of valid defense to each cause of action, and that the trial court in the case at bar properly decided that such defense existed.

This case involves an enormous amount of money. If the same or any part thereof is to be recovered from the county by protesting taxpayers, the amount of recovery should be limited to the amount to which such protesting taxpayers were justly entitled. Setting aside of the previous judgment merely reopens the case for a trial and judicial determination of the issues involved. The ends of justice will best be served by sustaining the judgment of the trial court in the case at bar.

RILEY, C. J., CULLISON, V. C. J., and SWINDALL, McNEILL, OSBORN, and BAYLESS, JJ., concur. ANDREWS, J., dissents. WELCH, J., disqualified.